Mr. Hughes, we would be pleased to hear your argument. Please proceed when you're ready. Good morning, Your Honors. May it please the Court, my name is John Hughes and I represent Carolina Casualty Insurance Company on this appeal. I intend to at least do my best to give you three minutes of my time for rebuttal. I'll give just a brief background and overview of this case. This case involves two insurers, Carolina Casualty, my client, and Burlington Insurance Company. As I said, the case involves two insurers, each of which issued an insurance policy to RW Trucking, a Wyoming company. My client, Carolina Casualty, issued an auto policy to RW Trucking in Wyoming. Burlington issued a commercial general liability or CGL policy to RW Trucking in Wyoming. And the two policies essentially dovetail with one another. The auto policy provides coverage for injury arising out of the use of an auto, while the CGL policy has an exclusion for injury arising out of the use of an auto. They also kind of dovetail in the sense that the Carolina Casualty auto policy has an operations exclusion, which excludes coverage for injury arising out of the use of certain machinery or equipment, including pumps and well servicing equipment. Mirroring that, the Burlington policy has an exception to its auto exclusion that applies to injury arising out of the A gentleman named Jason Metz is kind of at the center of this case. He worked for RW Trucking. His job was to drive a truck, tractor, and trailer to a well site in New Mexico and haul away flowback water. So on March 23rd of 2014, he drove his truck and his trailer to the well site. He got out. He loaded connected hoses between the well site and his trailer. He used a pump connected to his truck to pump water from the well site into his trailer. He finished. He loaded his hoses up, disengaged the pump, walked over to another vehicle to drop off a ticket, walked around his trailer, and then standing by himself on the ground decided to light a cigarette. When he did that, there was an explosion. There was another version of that. Correct. That's the testimony of Mr. Metz. The explosion occurred when he lit the cigarette and injured Mr. Garza. Now, Mr. Garza's version is slightly different, although it shouldn't affect the overall analysis, but his version is that when he arrived, Mr. Metz was, quote, loading up his truck. Now, we don't know if he meant loading the water onto the truck or loading the hoses onto the truck, but that's his testimony. So that version is slightly different, and I'll address both versions in my discussion today. So Mr. Garza was injured. He filed a lawsuit against RW Trucking and Jason Metz and several other defendants. Mediation was scheduled and held. Carolina Casualty and Burlington attended, participated in the mediation, and entered into a settlement agreement whereby each contributed towards the global settlement for Mr. Garza and each reserved their rights against one another to resolve. You kind of came along late in that process, though, didn't you? Well, I guess it depends upon what you mean by came along. I mean, we were involved in monitoring the case, and when we were asked to attend the mediation, we certainly said yes, we will. That was around October of 2016. But you declined to fund the defense itself? That's correct. Right. That's correct. We did not participate in the defense. Burlington funded the defense. You only came in for the settlement. Why did you come in for the settlement? Did you feel legally obligated to do so? Did you feel that it was gratuitous? It was $375,000 that you made that could be reported. That's the first question. The second question is, any representations that were made during the settlement conference itself, are those admissible in evidence? I'm sorry. Your first question was what representations were made? Yeah. Why did you make that $375,000 contribution? So because each... I'm not asking that for private information. Just what's in the public record is all I want you to answer. Each insurer thought that they were correct on the coverage issue. Carolina Casualty thought it didn't arise out of the use of an auto. Burlington thought it did. And so it was evident that litigation would eventually ensue between the two insurers. The better way to address that was to pay money up front with the understanding that the two would resolve their disputes later, which gave protection to the insured in the form of a release. It funded the claim of the plaintiff and got them out of the case so that two insurers who were much more well-equipped for the litigation process could resolve that issue later. So I guess ultimately to answer your question, because both insurers thought they were right and the other was wrong, both knew that litigation was going to be necessary to resolve the case. So it was done clearly in contemplation that there would be litigation between the two insurance companies. Correct. But in the interim, one of the insurance companies bore all the costs of defense up until the mediation, right? That's right, yes. And the duty to defend is another issue on this appeal that doesn't necessarily impact the voluntary payment argument, which is the first issue we've taken up. But yes, Burlington provided the defense. Carolina Casualty did not participate in the defense. And one of the issues on this appeal is whether we had a duty to defend, which I submit we don't or did not. Could we switch gears here for just one minute? Sure. Very short question. The issue about what was happening just immediately before the explosion, there are two versions of that. Either he was done doing with the pump and was going back to their or was still actively involved somehow or another. And the district court seemed to think that, and perhaps I'm wrong on this, but as I read it, the district court thought that the gaseous fumes would have lingered in the air, so it really didn't make that much difference as to whether it was immediately after or if it was a little bit later. And I'm kind of wondering, is there any evidence in the record about the lingering fumes on the premises irrespective of the pumping? There was no smoking out there, so I assume that there may have been some danger even if there was no pumping going on. Is the record clear on that at all? I don't recall any specific reference to that in the record. I do know that there is evidence in the record, expert testimony in the record, that this pump would have emitted volatile fumes and vapors while it was operating. And then there's the argument by Burlington that those are the fumes that were ignited. So at the very least it would have aggravated the circumstance. Right. Thank you. Sure. So the district court, after summary judgment, well let me back up, after the mediation and the agreement to resolve the case and reserve our rights to litigate later, we filed a declaratory judgment action. Burlington filed a counterclaim. We filed motions for summary judgment. The district court held that Carolina Casualty policy did not provide coverage and that the Burlington policy did provide coverage, which we agree with, obviously. However, the court then went on to hold that Carolina Casualty can't recover its indemnity payment, its settlement payment, because it paid as a volunteer. And that's where we believe the district court erred. I think it violates clear precedent of the Wyoming Supreme Court, of this court, on sound public policy. In what way? Are you saying that the Wyoming cases don't cover it because there was a reservation of rights? Or are you saying that Wyoming would say public policy requires that there not be voluntary payment in this instance to get the litigation, to get the payment? Public policy is in favor of settlements, of disputes. And a rule like this would discourage settlements because, frankly, the insurance companies do this all the time. They realize that they're going to have a coverage dispute, and rather than drag the underlying plaintiff and the insured through it, they decide together either I'll fund this or you'll fund this or we'll fund it jointly and we'll litigate this issue later. If an insurer who ultimately prevailed on the coverage issue was going to be prevented from recovering because he was a volunteer, then it would discourage that process and cases just wouldn't settle on that basis. So are you arguing that the Wyoming Supreme Court has ruled in that fashion, or you're asking us to assume that the Wyoming Supreme Court would rule? I don't think that the rule that the Wyoming Supreme Court has laid down in the Poston case from 1980 is that an insurer who acts in good faith to discharge a disputed obligation does not become a mere volunteer if it's ultimately determined that his policy did not apply. That's in the Poston case. The Weir case in this court in 1987 followed Poston and said essentially the same thing. The liability of an insurer need not be ironclad in order for it to settle a claim without a subsequent finding that the payment to the insured was voluntary. So the rule is yes, if you pay without an obligation, you can be considered a volunteer, but the exception is if it's a good faith discharge of a disputed obligation, you're not a volunteer, and that's exactly what happened here. Both Carolina Casualty and Burlington got together and in good faith chose to discharge their insured's obligation to the plaintiff and resolve their issue later. And so that's where the public policy comes in. If insurance companies are not allowed to do that, they're not going to have any incentive to resolve cases to get their insured's protected and to get plaintiffs compensated. Go ahead. But Burlington argues that you didn't proceed in good faith for a host of reasons. Sure. You want to address that? And that's what I would address next. The standard is good faith discharge of a disputed obligation. Burlington argues that Carolina Casualty did not act in good faith in not defending the insured, and for a host of reasons I don't believe that's correct, but more importantly, this issue has nothing to do with the defense. The standard is discharge a disputed obligation in good faith. In other words, make the settlement payment in good faith. There's no evidence or allegation that Carolina Casualty did not act in good faith when it paid money on behalf of its insured to settle this case. Both insurers were acting in good faith. So even if there were a lack of good faith with regard to the defense, that doesn't have any impact on this voluntary payment argument and whether it would prohibit recovery of the indemnity payments. The interesting thing is your duty is stronger as an insurance company to defend than it is to pay. So isn't there some inconsistency in your position to say we do not have a duty to defend, but somehow we're worried we may have a duty to pay, and therefore we're going to settle? I don't think our position would be that we're worried we may have a duty to pay. It's that we know that Burlington is going to contend that we have a duty to pay, and this is going to require litigation, and it's going to bring the insured and the underlying plaintiff through that process. But weren't you also worried that somebody was going to bring a claim that you should have had a duty to defend? Sure. That was Burlington's position. But that wasn't enough to cause you to make any payments for the defense cost. Correct, but I believe there was not a request from the insured to make payments for the defense cost. Making payments for defense costs would not have resolved the underlying case, and that's why I think there's a distinction between the defense and the insurance. Nobody ever made a claim to you? You're insured. Nobody made a claim for you to defend? Yes, yes. I'm speaking at the time of the mediation when parties were together trying to resolve the case. There wasn't an insured there saying, we need for you to pay our defense costs so that we can be released from this case. I'm just saying that's the distinction between the defense issue and the indemnity issue. Did you wish to reserve the remainder of your time? It's up to you. I do, Your Honor. Thank you. Thank you. May it please the Court, good morning. Thomas Crouch on behalf of Burlington. I'm only going to have a couple of comments kind of in response to the appellant's issues, the voluntary issue, the duty to defend issue, and then I want to turn to my cross appeal. On the duty to defend issue, I think we're all aware, and this is really true among virtually every state in the country, that where there is uncertainty in the allegations of a complaint and there's uncertainty on the information known to an insurer about whether their policy applies or not, the duty to defend is broader. I think Judge Abel used the term stronger. I might say broader in the sense that the duty to defend is triggered there, and I think in this particular case, this is a classic example of a situation where the allegations in the pleadings were very minimal. The information that was available to the insurers was inconclusive, and this was a scenario where neither insurer could escape its duty to defend under either the auto policy or a general liability policy. And turning to the voluntary component here, we had a carrier that did not act in good faith, and when we say that, we're talking about the voluntary principle is if a carrier has no obligation at all in the end, then its payment, an indemnity payment, is voluntary. But there is an exception to that where the carrier has to have acted in good faith in discharging a disputed obligation. Well, the problem here is if it was a disputed obligation, it's absolutely clear that the duty to defend existed. But why is that any concern to Burlington? Burlington was not the client or the customer or the insured of Carolina Casualty. So aren't you kind of just saying, well, they may have made a mistake versus their insured, and we're going to try to pounce on that and take advantage of it? It seems to me you're kind of an interloper on that problem. Well, I think the law is clear that one carrier's discharge of its duty to defend doesn't excuse that. No, but that question would be addressed in the context of a suit between that insurance company and its insured. You're another insurance company with a different insured, and you're saying, or not a different insured, but a different insurance company, and you're saying, hey, other insurance company, you're not fulfilling your obligations not to us, but to your insured. What difference does that make to you? Well, first of all, the insureds were tendering and were requesting performance by both carriers. And obviously if another carrier has an obligation that my client or any other carrier that's performing its duty to defend has an interest in recouping and equitably sharing that obligation. So I think it makes a big difference. Is that a claim in this case? Yes, Your Honor. Oh, the duty to insure. And there was a, we obviously had made a claim for reimbursement of defense costs. You have or have not? We have. Okay. We did. And the trial court acknowledged that. Okay. Go ahead. I'm sorry. No, go ahead. Just following up on that for a minute. If that's the case, and the client has received a defense throughout this whole thing, ultimately the insureds. The insured did, yes. Regardless of who did it. So in some ways, doesn't it kind of come down to, you know, you were out a batch of defense costs. And maybe Carolina ought to chip in. And other than that, you made your deal as to who's going to contribute what. To the ultimate.  To the ultimate settlement. And I think this is a good segue to my cross appeal, which, of course. I was hoping you were going to get to that. I know every case before this court is important. I know every litigant says my case is really important. Okay. This case is really important. All right. All right. We can get all into the niceties of the duty to defend and such. But on my cross appeal, I am raising a choice of law question. And I remember taking choice of law in law school a long time ago. And it was one of those subjects that was somewhat esoteric. And it's often in scenarios where they're like, wow, yeah, choice of law makes a big difference here. Well, choice of law makes a big difference here. Because we're talking about the duty to defend and the consequences of a breach of the duty to defend. And there really is not a body of case law or really any case law diving into and doing a real performance of a choice of law analysis on the duty to defend issue. And, of course, I think this case is going to warrant, you know, assuming you're going to agree with my position on it in perhaps a published opinion.  The choice of law question here should have been resolved with reference to the specific issue at hand. And I think that is where the district court went awry here. I think the district court essentially applied just the Alex Loci kind of approach and said, well, the policy was issued in Wyoming and all issues will be governed by Wyoming law. And it is very clear, even under Wyoming's choice of law principles, and we all agree that the forum state for the federal court, their choice of law rule applies. So we are talking about applying Wyoming's choice of law to determine which law applies to the duty to defend issue. But Wyoming's choice of law rule is very clear that you apply the choice of law analysis based on an issue by issue basis. And so you ask which state's law under restatement has the closest connection to the particular issue at hand. And here the particular issue at hand is the duty to defend, and there are several components of the duty to defend. One of them is what is an insurer or an insured arguing for that matter for a duty to defend supposed to consider. Some states articulate a very clear four corners rule, or in Texas they call it an eight corners rule, but it's the same rule. You can only look at what is in the pleading to make your determination. You can't consider any extrinsic evidence. Other states maybe I would say the opposite extreme. My home state, Arizona, says either party, either the insured or the insurer, must and can look to facts outside the complaint, and if those facts show either that the claim being made is one that is within coverage or without, the carrier has or has no duty to defend irrespective of the fact that the pleading appears to plead a claim within coverage. And then there are in between versions of that. Some states say, well, your duty to defend starts with the complaint, and then an insured can rely upon facts outside the complaint to establish a duty to defend, but an insurer cannot rely upon them to defeat a duty to defend. All of these different laws are very important, and they differ significantly, but that's just one component. Another area is what does the insurer have to do? Does the insurer have to perform an investigation or not? States differ on that issue. Some come out, and New Mexico is one of them, that says you have to conduct a reasonable investigation when you get a tender to look for those facts. Another area or component of this duty to defend issue is what are you supposed to do if you think you don't have a duty to defend? Well, New Mexico has a very strong public policy saying, insurers, this is the way you're going to do it. You're going to defend, and you're going to intervene in the tort action, and you're going to seek a determination that you don't have a duty to defend while you defend under a reservation. And then, of course, the fourth component of this is what happens if you don't do any of that? Well, New Mexico law says if you, and they use the term unjustifiably, but if you breach your duty to defend or you unjustifiably refuse to defend, then you have essentially bought a reasonable settlement. You're foreclosed from contesting coverage for that where you have breached that. That issue differs around the country, too. Is anybody here challenging the reasonableness of the settlement? Nope, nobody's challenging the reasonableness. So why are you telling us about that difference between New Mexico and Wyoming? Well, the key point I was making wasn't in reference to reasonableness, but was in reference to a carrier who has unjustifiably failed to defend is foreclosed from contesting coverage for a settlement. It loses its ability to contest coverage. But is that law that you are asserting here, which you think arises in New Mexico law? Yes. Is that law applicable when the insurance carrier that didn't defend actively participated in a merits substantive settlement agreement? Yes, Your Honor, where they have failed to otherwise perform all of their obligations that that state imposes on them when determining and discharging a duty to defend. Absolutely. I understand if you don't defend and somebody else makes a settlement that you weren't a participant in, that you might be claimed that you don't have the right anymore to challenge that. But my question to you is what is your best New Mexico case where a person didn't defend but actively participated consensually in a settlement conference and paid settlement amounts but was later denied the right to recover because only of their failure to defend? Your Honor, I'm not certain there is a case exactly like this. I'm not either. It seems to me that that's an important distinction. It's one thing to say, I've just been out of the case forever, I wasn't in defending, I wasn't settling, but now I want to challenge settlement. And we'd say, hey, you chose to stay out, you can't come in now. But in this case, they didn't choose to stay out forever. They were very actively involved in the Maris settlement and their money was important to getting this case resolved. They were certainly participating in the mediation. But, Your Honor, I think the ultimate public policy basis for the rule of law in New Mexico, that rule of law, holding an insurer is foreclosed from challenging coverage, is predicated on the policy that we want to make sure insurers perform their obligations the way they're supposed to. Whether there's uncertainty, they need to participate and defend the insured. They need to inform the insured of their coverage position. They need to draw the insured's attention to the applicable language upon which they believe coverage may be precluded. Let me just ask you, because this is a relatively straightforward case. We have language, policy language that's going to determine coverage depending on whether the accident was caused by the use of an automobile. And this isn't a case where the truck ran over a pedestrian after running a red light or something. The truck is parked. The truck did nothing as far as the accident. There was water that was pumped into the truck to take away from the well site. But, in other words, it's not a case that involves a detailed investigation so much. The facts are agreed except whether the hose had been rolled up, that sort of a thing. What is the theory of the duty to defend? Well, I don't think I could disagree more that, I mean, the use of the truck, and keep in mind, use includes loading and unloading, and that was the reason Mr. Metz was there with the truck, was loading and unloading operation. So I couldn't disagree more that the truck doesn't have something to do with this. The loading and unloading of that truck has everything to do with what happened here. I lost the train of thought on your second part of that. I'm just asking basically what the theory is that there was a duty to defend. Well, I guess I answered it then. The loading and unloading of this truck, they are loading highly flammable material in a flammable environment, and the operator of the truck, and keep in mind, use, it's operation or use, and use is loading and unloading, is there for one reason, and that's to load the truck, and he lights a cigarette, performs what's clearly a highly negligent act in the performance of that loading and unloading operation. That is why this is an auto risk. I think it's absolutely clear that it's not a risk. Obviously, my colleague equally thinks it's obviously clear it's not an auto risk, but where he's there in an unloading and loading scenario, and there really is only vague allegations in the complaint, that's where the carrier must say, hey, what actually happened here, and Carolina did not do that. What if the tank that carried the fracking fluid and water was actually decoupled? What if there was a, this isn't the facts, but I'm just postulating, what if he was carrying by hitch a separate trailer, and they unhooked the hitch, and it was loading and unloading when the explosion occurred. Would that still, in your opinion, be part of the use of an auto? Yes, because a trailer is defined as an auto. Even though it was unhooked from the truck? Yeah, even though it's unhooked from the tractor. From the tractor, right. Yes. Okay. Yeah. I see my time is up. May I just sum up very quickly? Very quickly. At a minimum, the court was correct in ruling that they were, they did not fall within the good faith exception of volunteer rule. So if this court agrees with them that this isn't an auto risk, then the status quo is what's required under the trial court's ruling, and the case should be affirmed. I ask that you apply New Mexico law to the duty to defend rule, and because they breached their duty to defend, they're obligated to pay the settlement. Thank you, Your Honor. I will just briefly address a couple of issues that were raised. First of all, here's why this injury didn't result from the use of an auto. The standard under Wyoming law is very clear that the injury must have been the natural and reasonable incident or consequence of the use of an auto, the causal connection being reasonably apparent. That's the Worthington case. The Ulrich case has said the accident must have arisen out of the inherent nature of the automobile. These injuries occurred because Mr. Metz lit a cigarette. Well, the accident, he could have lit cigarettes all day long and if it was a milk truck, nothing would have happened. Correct. So you've got to say that this accident would not have happened except critically for the character of that truck. Well, and there's a case that addresses that also, Your Honor. In the Worthington case, the court said, even though the antecedent use of an insured vehicle may create a condition that later results in harm, this fact alone is not necessarily sufficient to bring the harm within the insuring clause, especially when the facts reveal intervening acts of negligence disassociated from the use of the automobile. All the truck did was bring Mr. Metz to the well site. He chose to light a cigarette. That's the intervening independent cause that takes it out of the realm of resulting from the use of an auto. On the voluntary payment argument or issue, really quick, there's a case that's not in our brief, FICO versus providers, 888, FedSec at 663. I believe Judge Ebel was on the panel in that case, where the court said in discussing two insurers who had come together and settled a case just like we did here. In our view, the obvious purpose of the agreement on the part of both insurers was to avoid any contention of bad faith dealings with the insurers while preserving the right to litigate between them the issue of liability for the full coverage. Thus, the settlement simply, quote, cleared the way for the declaratory judgment action to determine the ultimate legal responsibility for the payments. It's exactly what's happened here, what happened in that case, and happens daily throughout the country, and that's why we believe the voluntary payment ruling is incorrect. Thank you, Your Honors. The case is submitted. Thank you, Counsel, for your arguments.